**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
_____X

**WILLIAM KEVIN CLEARY,**

                    **Plaintiff,**                    **Case No.**

      **-against-**

                                          **COMPLAINT**

**AUSTIN LLOYD, INC.,**
**AUSTIN COINS, INC.**
**ERIC P. LESAK,**
**BRANDON E. CHANCEY,**
**PATRICK J. WHITE,**
**DAVID SCHMIDT,**
**CHRISTOPHER M. PARADISE, and**
**P. WHITE HOLDINGS, LLC**

                                         **Jury Trial Demanded**

             **Defendants.**

_____X

        Plaintiff, William Kevin Cleary ("Mr. Cleary" or "Plaintiff") complaining of the Corporate Defendants, Austin Lloyd, Inc. ("Austin Lloyd"), Austin Coins, Inc. ("Austin Coins"), and P. White Holdings, LLC ("PWH"), and the Individual Defendants, Eric P. Lesak ("Lesak"), Brandon E. Chancey ("Chancey"), Patrick J. White ("White"), David Schmidt ("Schmidt"), and Christopher M. Paradise ("Paradise"), and through his counsel, respectfully alleges:

## NATURE OF THE CASE

1.      Plaintiff brings this action pursuant to the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961-1968 (RICO), and New York law. This case involves a precious metals telemarketing racketeering/fraud scheme by a group of Long Island precious metal coin dealers who conspired to and, in fact, did commit telemarketing coin fraud against Mr. Cleary and other

non-party elderly citizens[1] individually and through and under the auspices of the corporate defendant, Austin Lloyd (hereinafter the "Austin Lloyd Enterprise"), a RICO enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(b)-(d)).

2.     The Austin Lloyd Enterprise's scheme was conducted by the Individual Defendants by way of an "open-ended" pattern of racketeering activity of specific predicate acts consisting of: (1) high-pressure telemarketing phone calls and fraudulent, unconscionably overpriced sales of precious metal numismatic coins to Plaintiff as "investments" [2]; (2) credit card fraud; and (3) the theft and conversion of Plaintiff's coin inventory obtained from other coin dealers which the Individual Defendants, specifically Chancey and Lesak, conned Plaintiff into shipping to Austin Coins ostensibly to market and sell his coins to fictitious "wealthy clients" but, instead, fraudulently converting and stealing the coins, all in furtherance of the Austin Lloyd Enterprise and to enrich themselves.

3.     The Individual Defendants are principals and officers of the Corporate Defendants, Austin Lloyd, Austin Coins, and PWH, who maintained an interest in and/or controlled the Austin Lloyd Enterprise within the meaning of 18 U.S.C. § 1962(b) and/or telemarketing sales

---

[1] Coin fraud targeting the elderly has a long history in the Eastern District of New York. *See, e.g., United States v. Romano*, No. 09-CR-168 (SJ) (VMS), 2013 U.S. Dist. LEXIS 208446, at *19 n.5 (E.D.N.Y. 2013) and the testimony adduced at the criminal RICO coin fraud trial against Michael Romano and William Kearney:

   Patrick Coleman, Defendants' former employee, testified at trial that . . . Mr. Kearney's avowed sales tactics were to "crush weak people" and to "confuse the shit" out of "older people." . . . Daren Mutone, a former employee of Atlantic Coin Galleries, testified at trial that the Atlantic Coin Galleries salespeople would make fun of the victims because they were old and easier to convince. . . . Mr. Mutone testified that the elderly were "easier to push around," and that Mr. Romano and Mr. Kearney would hear the jokes and push the sales staff to sell even more coins to a victim who showed susceptibility to pressure and manipulation.

[2] On information and belief, and based upon Chancey's and Lesak's own representations, the Austin Lloyd/Austin Coins telemarketers recorded their telephone conversations with Mr. Cleary and maintain all of those recorded telephone conversations to the present.

agents/employees/associates of the Corporate Defendants, Austin Lloyd and Austin Coins, as well as Corporate Defendant, PHW, which is also a RICO Person, who conducted and participated in the conduct of the Austin Lloyd Enterprise's affairs to advance the Austin Lloyd Enterprise by conspiring within the meaning of 18 U.S.C. § 1962(d) to defraud and rob Mr. Cleary and other elderly customers[3] of all or part of their life savings through a phony and fraudulent telemarketing coin investment scam and a coin brokering scam.

**4.**     Plaintiff William Kevin Cleary, a 78-year-old retired Caterpillar Tractor Company maintenance mechanic, fell prey to the Individual Defendants' fraudulent scheme in furtherance of the Austin Lloyd Enterprise which has targeted numerous elderly telemarketing customers over a period of years, continuing to the present, which is facilitated by and conducted through use of the U.S. mail and U.S. wires in violation of 18 U.S.C. §§ 1341, 1343 and which resulted in direct damages to Mr. Cleary of at least **Forty-Nine Thousand Twenty-Two and 46/100 Dollars ($49,022.46)** as part of an open-ended[4], systematic pattern of fraud targeting elderly customers, as

---

[3] In this Complaint, whenever the term "customer(s)" appears, Plaintiff intends it to mean both "customer(s)" and "consumer(s)."

[4] Unfortunately, Mr. Cleary is far from the only elderly customer to complain of identical or similar coin fraud "investment" and "appraisal" schemes by the Individual Defendants in furtherance of the Austin Lloyd Enterprise. *See, e.g., Stephen E. Mauch v. Austin Lloyd, Inc., et al.*, Case No. 2:22-cv-04180 (E.D.N.Y.) filed July 16, 2022 (alleging similar fraud scheme and damages of $1.8 million to elderly corn farmer); *Jeffrey Miller v. Austin Lloyd, Inc., et al.*, Case No. 2:23-cv-06140-JMA-SIL (E.D.N.Y.) (alleging similar fraud scheme and damages of $51,300.00 to elderly, retired dentist) filed August 15, 2023; *Allan R. Miller and Cheryl A. Miller v. v. Austin Lloyd, Inc., et al.*, Case No. 2:23-cv-06207-JMA-SIL (E.D.N.Y.) (alleging similar fraud schemes and damages of $92,000,00 to an elderly couple) filed August 17, 2023; *Earl E. Keith v. Austin Lloyd, Inc., et al.*, Case No. 2:23-cv-09461 (E.D.N.Y.) (alleging similar fraud scheme and damages of over $244,000.00 to 82 year old victim) filed December 22, 2023; *AnnaMarie F. Eakins v. Austin Lloyd, Inc., Austin Coins, Inc., et al.*, Case No. 2:24-cv-00206 (GRB) (SIL) (E.D.N.Y.) (alleging similar fraud schemes and damages of over $580,000.00 to 77 year old widow and stroke victim); and *John H. Fikse v. Austin Lloyd, Inc. and Austin Coins, Inc., et al.*, Case No. 2:24-cv-00220 (NJC) (ST) (E.D.N.Y.) (alleging similar fraud schemes and damages of $328,550.00 to 90 year old victim). *See also Larry Dale Withers v. Austin Lloyd, Inc., et al.*; File No. 23-CVS-1024; In the General Court of Justice, Superior Court Division, Pender County, North Carolina (state court coin fraud case). Plaintiff's counsel is also in the process of preparing complaints against these same Defendants on behalf of additional elderly telemarketing fraud victims. The foregoing demonstrates an ongoing, open-ended RICO pattern.

well as breach of fiduciary duty resulting in the theft and conversion of Mr. Cleary's coin inventory and sales of unconscionably overpriced coins to Mr. Cleary.

5.      Mr. Cleary also contends that the Individual Defendants carried out this scheme to steal his money through a conspiracy which violated 18 U.S.C. § 2314, prohibiting the theft of money moving across state lines, a form of "racketeering activity" in furtherance of the Austin Lloyd Enterprise.

6.      Defendants conducted their scheme to defraud Mr. Cleary and steal his money through misleading and unconscionable misrepresentations and sales tactics, and outright lies, by mail and wire fraud that resulted in direct damages to Mr. Cleary of at least **Forty-Nine Thousand Twenty-Two and 46/100 Dollars ($49,022.46)** as part of an open-ended systematic pattern of fraud targeting elderly customers, as well as common law fraud and breach of fiduciary duty resulting in the theft and conversion of Mr. Cleary's coin inventory and sales of unconscionably overpriced bullion coins to Mr. Cleary.

7.      The Individual Defendants are all (or represented themselves to be) principals and officers of the Corporate Defendants, Austin Lloyd and Austin Coins, who, working in combination, conspired to, and did in fact, defraud Mr. Cleary (and on information and belief, other Austin Lloyd and Austin Coins customers), to enrich themselves and to further the Austin Lloyd Enterprise.

8.      Plaintiff William Kevin Cleary fell prey to the Individual Defendants' fraudulent scheme on behalf of Austin Coins, and in furtherance of the Austin Lloyd Enterprise, and Mr. Cleary seeks to recover actual damages, consequential damages, exemplary damages, treble damages under 18 U.S.C. § 1964, statutory treble damages under New York General Business Law § 349, pre- and post-judgment interest, attorneys' fees, litigation expenses and costs of suit.

## PARTIES, JURISDICTION AND VENUE

### *The Parties*

**9.**     Plaintiff, William Kevin Cleary is a citizen and resident of the State of Illinois.

**10.**     Defendant Austin Lloyd, Inc.[5] ("Austin Lloyd") is a privately-held corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County, New York with a physical business address at 48 S. Service Road, Melville, NY 11747. Austin Lloyd received monies—and facilitated the receipt of monies—by its principals and agents, specifically, the Individual Defendants, as well as PWH, that were defrauded and stolen from Mr. Cleary.

**11.**     Defendant Austin Coins, Inc. ("Austin Coins") is a privately-held corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County, New York and a physical business address at 48 S. Service Road, Melville, NY 11747. Austin Coins received monies—and facilitated the receipt of monies—by its principals and agents, specifically, the Individual Defendants, as well as PWH, that were defrauded and stolen from Mr. Cleary.

**12.**     Defendant P. White Holdings, LLC ("PWH") is a limited liability company organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, PWH is a shell company and alter ego of its sole and managing member, Patrick J. White, who is a

---

[5]   Austin Lloyd, which was incorporated in New York on May 5, 2015, is a sister entity to, or de facto predecessor-in-interest to Austin Coins, which was incorporated in New York on June 9, 2020. Both entities share the same office address and the same principals/officers. Austin Coins still operates as or under the d/b/a "Austin Lloyd, Inc." Austin Lloyd, Inc. is not an Individual Defendant (i.e. a RICO "Person") for purposes of Plaintiff's RICO causes of action; however, it is a Defendant in Plaintiff's non-RICO, New York state law causes of action.

principal/officer of and controlled Austin Lloyd, Inc. and Austin Coins, Inc. PWH received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund PWH's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Plaintiff through a pattern of racketeering activity.

13.     Defendant Eric P. Lesak ("Lesak"), operating under the alias "Mike Todd," [6] and known as "the Closer," is a New York citizen and resident of Nassau County, New York, with a last known residential address at 3494 Clifton Boulevard, Wantagh, NY 11793 and a business address in Suffolk County at 48 S. Service Road, Melville, NY 11747. Lesak is a principal/officer of Austin Lloyd, Inc. and Austin Coins, Inc. as well as a telemarketing sales agent and  "investment advisor" for Austin Lloyd, Inc. and Austin Coins, Inc., who participated in the conduct of the affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Plaintiff, and others, through a pattern of racketeering activity.

14.     Defendant Brandon E. Chancey ("Chancey") is a New York citizen and resident of Suffolk County, New York, with a last known residential address at 49 Franklin Street, Northport, NY 11768-3058 and a business address in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, Chancey is or, at all times pertinent was, a telemarketing sales agent

---

[6]   It is understandable that a twice-convicted recidivist securities fraudster such as Lesak would use an alias. *See* https://www.sec.gov/files/litigation/complaints/2018/comp24239.pdf. Use of a fictitious name makes it difficult, if not impossible, for victims of coin fraudsters' schemes to identify, sue, or serve the actual, specific perpetrator. Further, there is precedent for RICO coin fraud telemarketers to use aliases when interacting with customers. *See United States v. Romano,* No. 09-CR-168 (SJ) (VMS), 2013 U.S. Dist. LEXIS 208446, at *20 n.6 (E.D.N.Y. 2013) (in criminal RICO coin fraud trial, "Michelle Stumpf testified . . . that the Defendants and their salespeople used false names when interacting with customers").

and "investment advisor" for Austin Lloyd, Inc. and Austin Coins, Inc., who participated in the conduct of the affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Plaintiff through a pattern of racketeering activity.

15.     Defendant Patrick J. White ("White") is a New York citizen and resident of Suffolk County, New York with a last known residential address at 3 Sweet Hollow Road, Huntington, NY 11743-6530 and a business address in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, White is a principal/officer of and controlled Austin Lloyd, Inc. and Austin Coins, Inc., and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Plaintiff, and others, through a pattern of racketeering activity.

16.     Defendant David Schmidt ("Schmidt') is a New York citizen and is believed to be a resident of Suffolk County, New York, with a business address in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, Schmidt is a principal/officer of and controlled Austin Lloyd, Inc. and Austin Coins, Inc. and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Plaintiff, and others, through a pattern of racketeering activity.

17.     Defendant Christopher M. Paradise ("Paradise") is a New York citizen and resident of Suffolk County, New York, with a last known residential address at 12 Mallard Cove, Centerpoint, NY 11721-1641 and a business address in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, Paradise is a principal/officer of and controlled Austin Lloyd,

Inc. and Austin Coins, Inc., and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Plaintiff, and others, through a pattern of racketeering activity.

<em><u>Jurisdiction and Venue</u></em>

18.     This Court has jurisdiction of this case as a federal question pursuant to 28 U.S.C. § 1331 and 18 U.S.C. §1964(c), RICO's civil damages provision. In addition, the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 insofar as they are so related to the federal claims that they form part of the same case or controversy and arise from the same nucleus of operative facts.

19.     In addition, or else in the alternative, this Court has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a), as Plaintiff is a citizen of Illinois, and Defendants all are citizens of states other than Illinois, and the amount in controversy exceeds $75,000 exclusive of interest, costs, and attorneys' fees.

20.     This Court has *in personam* jurisdiction over all Defendants because at all relevant times Defendants conducted their business and fraudulent activities from their offices in this District. Further, all Defendants resided, maintained citizenship, were found, had agents, and are amenable to service in this District.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

<strong>STATEMENT OF PERTINENT FACTS</strong>

<strong>A.     <u>Primer: the Coin <em>Fraud</em> Industry</u></strong>

22.     While there certainly are upstanding, reputable precious metals dealers, a criminal subset (the "coin *fraud* industry"), operating in the penumbra of those reputable dealers, has been a longstanding problem. In late 1983 and early 1984, federal and state authorities initiated a long-

8

awaited crackdown on precious metals dealers operating fraudulent "boiler room" schemes across the country. These precious metals fraudsters and racketeers had bilked investors out of several hundred million dollars.[7] Banking on customers' lack of knowledge, and using the nuances of coin collecting, grading, historical factors and mint populations, unethical coin dealers continue to confuse and confound the reasonable consumer with deceptive claims of significant investment returns and bargains, often rising to the level of, and culminating in, outright fraud and counterfeiting. The United States Senate and various Federal and State agencies and commissions have investigated the criminal underbelly of the precious metals industry.

**B.** **The Coin Fraudsters Prey Upon the Elderly.**

23.     A decade ago in 2014, a United States Senate Special Committee on Aging conservatively estimated that more than "*10,000 Americans have been victimized through these schemes, with losses around $300 million.*"[8] The U.S. Senate Report further revealed that the "*overwhelming number of victims in precious metal fraud are seniors*."[9] Likewise, the FBI has found that corrupt coin dealers intentionally target the elderly specifically "*because they [are] elderly and [the dealers] thought [they] could get away with it*" and that, while the amounts defrauded as to any individual elderly customer may seem small in comparison to certain other more high profile financial frauds, "*it represents a great deal to the victims – it was one man's life savings.*"[10] In

---

[7]   *See Commodity Investment Fraud II, Hearings Before the Permanent Subcommittee on Investigations of the Senate Committee on Governmental Affairs,* 98th Cong., 2d Sess. 145-88 (1984)*; see also War on Florida Boiler Rooms,* N.Y. Times, Nov. 14, 1983; *Regulating Bullion Dealers,* N.Y. Times, Oct. 31, 1983; *Senate to Study Gold Dealers,* N.Y. Times, Oct. 27, 1983; *Bullion Fraud: Who Protects the Investor?,* Chicago Tribune, Oct. 25, 1983.

[8]   *See Exploring the Perils of the Precious Metals Market*, U.S. Senate Special Committee on Aging, *https://www.aging.senate.gov/download/precious-metals-market-committee-staff-investigation,* at 17 (hereinafter "US Senate Report"*).*

[9]   *See* US Senate Report at 16.

[10]   *See Fraudster Targeted Elderly Victims*" https://www.fbi.gov/news/stories/the-case-of-the-corrupt-coin-dealer.

fact, most of the fraud advisories and enforcement actions by the Federal and State agencies focus on the financial exploitation of the elderly at the hands of fraudulent coin dealers.[11]

24.    More recently, the New York Attorney General published a consumer alert specifically warning against "**Coin Swindles**" in which she warns that: "*[s]o called 'rare coins' are often sold to unwary investors who are led to believe that they are a good investment that will increase in value over the years. Representations made about the expected increase in the value of these coins are almost always untrue and part of a scam perpetrated against unsophisticated, often elderly victims*."[12] In fact, most of the fraud advisories and enforcement actions by Federal and State agencies focus on the financial exploitation of the elderly at the hands of fraudulent coin dealers.[13] True to form, Defendants in this case targeted the elderly Mr. Cleary.

### C.    The Austin Lloyd Enterprise follows the Pattern.

25.    The operation run by White, Schmidt, Paradise, and Lesak in furtherance of the Austin Lloyd Enterprise is for the primary purpose of selling collectible numismatic, semi-numismatic and bullion coins[14] directly to customers over the telephone (and/or via the internet) at unconscionably and fraudulently high prices. Each member of the Austin Lloyd Enterprise conspired with the others to conduct the business affairs of the Austin Lloyd Enterprise through a pattern of

---

[11]  *See, e.g.,* https://dfpi.ca.gov/2022/02/01/dfpi-sues-to-stop-68-million-precious-metals-and-coin-fraud-targeting-elderly/.

[12]  *See* https://ag.ny.gov/common-investment-scams. Other state attorneys general have also issued precious metals fraud consumer alerts. *See, e.g.,* https://www.texasattorneygeneral.gov/consumer-protection/investing-gold-coins (Texas) and https://www.ag.state.mn.us/consumer/publications/CoinDealers.asp  (Minnesota).

[13]  *See, e.g.,* https://dfpi.ca.gov/2022/02/01/dfpi-sues-to-stop-68-million-precious-metals-and-coin-fraud-targeting-elderly/.

[14]   In this context, the term "numismatic coin" refers to collectible coins whose value is based upon other qualities in addition to the metal content of the coin, such as appearance, population, grade, rarity, and other attributes. "Semi-numismatic coin" refers to a coin whose value partially derives from its numismatic value and mainly from the value of its precious metal content.  "Bullion coins" derive their value almost entirely from the fair market value of the precious metal content, commonly referred to as the "spot value."

racketeering activity. White, Schmidt, Paradise, and Lesak (and Chancey, as well as other telemarketing sales agents of the Austin Lloyd Enterprise whose identities are known only to Defendants) make hundreds of intrastate and interstate sales calls per month — via the telephone — utilizing unlawful, false, misleading, and unconscionable high-pressure sales tactics that convince customers that they are making "investments" and that target and take advantage of the elderly. These schemes are time-tested and are specifically designed to prevent the customers from making any informed decisions when buying, selling, and trading precious metals.

## FACTS COMMON TO ALL CAUSES OF ACTION

26.     This case involves the theft and conversion of Mr. Cleary's coin inventory by smooth talking, telemarketer con artists and racketeers under the guise of acting as a broker for the sale of Plaintiff's coin inventory to fictitious "wealthy clients" who were "coming to town," as well as sales of fraudulently overpriced precious metal coins to Mr. Cleary.

27.     Plaintiff William Kevin Cleary was first contacted by Austin Lloyd/Austin Coins telemarketing representatives, Chancey and Lesak in mid-February 2023. By that time, Mr. Cleary had amassed a modest inventory of gold and silver numismatic and bullion coins from various coin dealers over the course of several years.

28.     On information and belief, Austin Lloyd/Austin Coins principals include the RICO Persons and Individual Defendants, Patrick J. White, Eric P. Lesak, David Schmidt, and Christopher Paradise, and corporate RICO Persons, Austin Coins, Inc. ("Austin Coins") and P. White Holdings, LLC ("PWH"), each of whom participate in the Austin Lloyd Enterprise by taking at least some part in controlling and directing its affairs, and particularly its telemarketing coin business. On information and belief, the other Individual Defendant, Brandon Chancey, at all times pertinent to this suit was a telemarketing sales agent or employee for Austin Lloyd/Austin Coins who was a member of and acting in furtherance of the Austin Lloyd Enterprise and the interests of its

principals. Upon information and belief, the corporate RICO Person PWH is used to further the Austin Lloyd Enterprise through wholesaling coins internally so as to move illegal profits away from the enterprise. Upon information and belief, PWH is also used to move assets obtained through fraud out from the enterprise in an effort to shield the Individual Defendants by creating another corporate layer.

29.     Defendants, Chancey and Lesak, representing themselves to be "investment" advisors and principals of Austin Lloyd/Austin Coins, and as agents of Austin Lloyd/Austin Coins, acting in furtherance of the Austin Lloyd Enterprise, singly and/or in combination, scammed and defrauded the elderly Mr. Cleary as set forth herein.

30.     *First*, on or about February 14, 2023, Chancey cold-called Mr. Cleary and told him that Austin Coins had obtained some coins from the coin collection of a "wealthy estate" which he offered to sell to Mr. Clearly for $4,000.00. As Chancey and Mr. Cleary were speaking, they were joined on the call by Lesak (using the alias "Mike Todd") who told Mr. Cleary that he was one of the "owners" of Austin Lloyd. Lesak falsely told Mr. Cleary that the coins at issue were "put together" for a "wealthy estate" (Mr. Cleary thinks that he dropped the name "Vanderbilt"), that the coins were a great investment, and that he could let Mr. Cleary have the coins Chancey had offered plus additional "estate" coins for $4,950.00.[15] Mr. Cleary agreed to purchase the gold "estate" coins in reliance on Chancey's and Lesak's representations and gave them his credit card number to consummate the $4,950.00 sale. Shortly thereafter, Mr. Cleary received shipment of the purported "estate" coins and was disappointed to discover that they consisted of three (3) $5

---

[15]   On information and belief, all telemarketers for Austin Lloyd and Austin Coins, including Chancey and Lesak, utilize standardized sales "scripts" composed and developed by White and Lesak to lure and convince their elderly customers to purchase grossly overpriced coins and/or to ship their coin inventories to the Austin Lloyd Enterprise ostensibly for "appraisal" and "sale," but actually for conversion and theft.

Walking Liberty gold modern bullion coins. *See* **Exhibit A**, a true and correct copy of Austin Coins Invoice No. 12557 dated February 14, 2023 for "Qty 3" of "Mixed Date $5 Walking Liberties NGC MS61." It was subsequently determined through a professional appraisal that Mr. Cleary lost **$4,285.00** (or 87% of his investment). *See* **Table 1**, below.

31.     *Second*, during that same February 14, 2023 telephone conversation, Chancey and Lesak asked Mr. Cleary if he might have some coins that he was interested in selling. They falsely told Mr. Cleary that they had some "wealthy clients" who were coming to the Austin Lloyd offices in New York and that they were trying to acquire some more "inventory" to show the "wealthy clients." Chancey and Lesak also offered to exchange Mr. Cleary's coin inventory with "higher grade" coins and represented that they would "guarantee" that they could make Mr. Cleary a 20% annual profit if he would send them his coin inventory and let them manage it. They also represented to Mr. Cleary that he could "get out at any time." Based upon these representations, Mr. Cleary agreed to ship some of his coin inventory to Austin Lloyd for appraisal and potential sale to the (fictitious) "wealthy clients." The next day, Mr. Cleary received prepaid shipping boxes from Austin Lloyd/Austin Coins and shipped back one box of coins. On the following day, Mr. Cleary shipped Austin Lloyd/Austin Coins two more boxes of coins. An inventory of the coins Mr. Cleary shipped to Austin Lloyd/Austin Coins is set out in the embedded **TABLE 2**, below, reveals that Mr. Cleary shipped 300 coins appraised at **$44,737.46** at the time of shipment to Austin Lloyd.

32.     Mr. Cleary also received, but did not execute or return, an "Austin Lloyd, Inc." Authorization Form purporting to give "legal authorization for Mike Todd [Lesak], *Senior Account Advisor at Austin Lloyd, Inc.* to trade, sell, or purchase the coins sent in for appraisal from the respected client." *See* **Exhibit B**, a true and correct copy of the unexecuted Authorization Form dated February 14, 2023.

**33.**     On or about February 16, 2023, Mr. Cleary received a telephone call from his credit card company informing him that his credit card number which he had given to Lesak in New York to purchase the "estate" coins had been used to purchase some food from a restaurant in New York.

**34.**     In addition, after he received the three (3) gold coins from Austin Coins, Mr. Cleary determined that Chancey and Lesak had significantly overpriced the coins far above fair market value. Mr. Cleary quickly determined that he had no desire to do business with Chancey, Lesak, or Austin Lloyd/Austin Coins, and he called to tell Chancey and Lesak to send his coin inventory back and to return the three (3) gold ("estate") coins; however, he was only given the run-around and no satisfaction. Subsequently, he managed to get Lesak on the telephone only to have Lesak tell him that he had sold one of Mr. Cleary's coins for $7,400.00 after which Lesak simply refused to take Mr. Cleary's calls.

**35.**     Finally, on or about February 21, 2023, without prior warning or authorization, Mr. Cleary received a shipment of coins at his home in Illinois worth approximately **$5,982.50**, which is a fraction of the value of the 300 coins (i.e., $44,737.46) he shipped to Austin Lloyd/Austin Coins in February 2023 and had repeatedly demanded that they return, along with his return of the  Austin Coins they had shipped him. *See* **Exhibit C**, a true and correct copy of the Austin Coins invoice No. 14406, dated February 21, 2023. The invoice directed Mr. Cleary to sign and return it to Austin Coins and included the statement "All Trades are Final."  Clearly, the intent was to obfuscate the conversion and theft of Mr. Cleary's coin inventory by framing the transaction as a "trade." Again, Mr. Cleary did not sign and return the invoice.

**36.**     Once they had Mr. Cleary's coins in their possession, Chancey and Lesak refused to return them and instead blatantly converted and stole the coins to enrich themselves, the other Austin Lloyd/Austin Coins principals, and the Austin Lloyd Enterprise.

**37.**     On information and belief, Austin Coins' principals include the Individual Defendants,

White, Schmidt, and Paradise. In addition, Individual Defendant, Lesak who interacted directly with Mr. Cleary via telephone as an "investment advisor" and "senior account advisor," is believed to be, and holds himself out as, a principal of Austin Lloyd and Austin Coins. Individual Defendant, Chancey, while holding himself out as a principal of Austin Lloyd and Austin Coins, is believed to be at minimum an agent of those entities. Each of the Individual Defendants is a member of the Austin Lloyd Enterprise. In addition, on information and belief, Lesak, under the alias "Mike Todd," has represented to other telemarketing customers that he is the "Executive Director of Purchasing and Senior Partner" for Austin Coins.

**38.**     Embedded immediately below are: **TABLE 1**, which itemizes the overpriced coin purchase that Mr. Cleary made in reliance upon the "investment" advice, misrepresentations as to value, and high-pressure sales tactics of Austin Coins' principals and telemarketers, Chancey and Lesak; **TABLE 2**, which catalogues the coins of Mr. Cleary that Austin Lloyd, through Chancey and Lesak, absconded with by false representations and demonstrates Mr. Cleary's resulting actual damages proximately caused by the Defendants' fraud, conversion, and theft; and **TABLE 3**, which catalogues the unwanted coins that Austin Coins shipped to Mr. Cleary as a purported "trade." In conjunction, the three tables set out and describe the particulars of each of Mr. Cleary's interactions with Austin Lloyd/Austin Coins and demonstrate the resultant damages Mr. Cleary suffered as a result:

### Table 1—Mr. Cleary's Purchases from Austin Coins

| Date | Invoice | Description | # coins | Total Price Paid | FMV | Loss |
|---|---|---|---|---|---|---|
| 2/14/2023 | 12557 | Mixed Date $5 Gold Walking Liberty | 3 | 4,950.00 | $665.00 | $4,285.00 |
| | | | | | | |
| | | **TOTALS** | | | | **$4,285.00** |

**Table 2—Mr. Cleary's Coins Fraudulently Converted and Stolen by the Defendants**

| Description--Gold Coins | # Items | FMV Per Item | FMV Extended |
|---|---|---|---|
| 1856  50C LIBERTY MS63  BG-434 | 1 | $ 1,020.00 | $ 1,020.00 |
| 1874 25C Liberty AU53 BG866 | 1 | $ 528.00 | $ 528.00 |
| 1880 $5 Gold Liberty RAW XF | 1 | $ 550.00 | $ 550.00 |
| 1881 50C Liberty MS 64 PL BG-1070 | 1 | $ 2,400.00 | $ 2,400.00 |
| 1882 $5 Gold Liberty  MS62 | 1 | $ 600.00 | $ 600.00 |
| 1885P $5 Gold Liberty | 1 | $ 600.00 | $ 600.00 |
| 1899 $5 Gold Liberty MS63 | 1 | $ 811.00 | $ 811.00 |
| 1900 $20 Gold Liberty  MS64 | 1 | $ 2,400.00 | $ 2,400.00 |
| 1901S $10 Gold Liberty MS64 | 1 | $ 2,065.00 | $ 2,065.00 |
| 1903S $5 Gold Liberty MS64 | 1 | $ 1,021.00 | $ 1,021.00 |
| 1906  $2.50 Gold Indian Head MS64 | 1 | $ 660.00 | $ 660.00 |
| 1910S -1912S $5 Gold Indian Head AU58 (1 of 3 coin set) | 1 | $ 1,020.00 | $ 1,020.00 |
| 1911P $2.50 Gold Indian Head | 1 | $ 535.00 | $ 535.00 |
| 1911-S $5 Gold Indian HeadAU58 (1 of 3 coin set) | 1 | $ 840.00 | $ 840.00 |
| 1912-S $5 Gold Indian Head AU58 (1 of 3 coin set) | 1 | $ 1,440.00 | $ 1,440.00 |
| 1914D $5 Gold Indian Head | 2 | $ 765.00 | $ 1,530.00 |
| 1926  $2.50 Gold Indian Head Sesquicentennial MS64 | 1 | $ 604.00 | $ 604.00 |
| 1993P $10 Gold American Eagle PR70 DCAM  Moy | 1 | $ 600.00 | $ 600.00 |
| 1998 $5 Gold American Eagle | 2 | $ 400.00 | $ 800.00 |
| 2017 $5 Gold American Eagle | 2 | $ 215.00 | $ 430.00 |
| 2017W $5 Gold American Eagle PR70 3PC set | 3 | $ 750.00 | $ 750.00 |
| 2018 T.Dacunha gf100 Prince Harry & Meghan PF70 Ultra Cameo | 1 | $ 2,350.00 | $ 2,350.00 |
| 2018W $1 Silver American Eagle PR70 DCAM FDOI one of 500 | 1 | $ 150.00 | $ 150.00 |
| 2018W $100 Platinum American Eagle-Life PR70 DCAM FDOI Mercanti | 2 | $ 1,500.00 | $ 3,000.00 |
| 2023 $5 Gold American Eagle MS70 FDOI | 1 | $ 250.00 | $ 250.00 |
| 2023 $5 PR69 Canada Maple Leaf AU Reverse Proof FDOI | 1 | $ 250.00 | $ 250.00 |
| 2022  $5 SAMOA TWO FACE DC COMICS PL69 | 2 | $ 79.99 | $ 159.98 |
| 2022  $5 SAMOA TWO FACE DC COMICS  MS70 ANTIQUED | 2 | $ 79.99 | $ 159.98 |
| 2019-W  $1 SAE BURNISHED MS70   1st strike CASTLE | 2 | $ 67.00 | $ 134.00 |
| 2023 $1 SAE MS70  FDI  DAMSTRA | 1 | $ 75.00 | $ 75.00 |
| 2023 $1 SAE MS70  GAUDIOSO | 1 | $ 75.00 | $ 75.00 |
| 2023  $1 SAE  MS70   CLEVELAND | 1 | $ 75.00 | $ 75.00 |
| 2019-S Silver Panda 3 COIN SET MS70  1st release FANG | 3 | $ 127.00 | $ 127.00 |
| 2023 $1 SAE  MS70   FDOI CLEVELAND | 1 | $ 75.00 | $ 75.00 |
| 2023 $1 SAE MS70 FDI  DAMSTRA | 1 | $ 75.00 | $ 75.00 |
| 2022 $1 SAE MS70 FDI CLEVELAND | 1 | $ 75.00 | $ 75.00 |
| 2022-S $1 SAE PR 70 CLEVELAND early release | 1 | $ 75.00 | $ 75.00 |
| 2023 $15 CANADIAN YR RABBIT 1OZ. SILVER PR70 DCAM  FDI BLUNT | 1 | $ 50.00 | $ 50.00 |
| 2022-W  SILVER "10TH ANN FAREWELL PENNY" SP 70 FDOI  BLUNT | 1 | $ 89.00 | $ 89.00 |
| 2021  SAE T-1 MS70 LAST DAY OF PROD'n  MERCANTI | 1 | $ 114.00 | $ 114.00 |
| 1986-S $1 SAE RARE PF70 Ultra Cameo MERCANTI | 1 | $ 480.00 | $ 480.00 |
| 1986 $1 SAE  MS69 1st strike | 1 | $ 79.00 | $ 79.00 |

| | | | |
|---|---|---|---|
| 1989  $1 SAE  MS69 1st strike | 2 | $ 79.00 | $ 158.00 |
| 2019-W $1 SAE  PR70  DCAM CLEVELAND | 3 | $ 89.00 | $ 267.00 |
| 2017-W $1 SAE BURNISHED MS70 FDI  JONES | 1 | $ 59.00 | $ 59.00 |
| 2017-W $1 SAE BURNISHED  MS70 FDI NOY | 1 | $ 59.00 | $ 59.00 |
| 2017-W $1 SAE BURNISHED  MS70 FDI  MERCANTI | 1 | $ 59.00 | $ 59.00 |
| 2017  $1 SAE MS70 1st strike | 10 | $ 59.00 | $ 590.00 |
| 2017-W $1 EAGLE FIRST RELEASE ULTRA CAMEO PF70 | 3 | $ 77.00 | $ 231.00 |
| 2020-P  $1  EMERGENCY STRIKE ANACS-MS70  LIBERTY BELL #156 OF 827 | 1 | $ 39.00 | $ 39.00 |
| 2020-S EMERG'Y PROD  FIRST STRIKE COIN* #1093 OF 2497 ANACS MS70 | 1 | $ 72.00 | $ 72.00 |
| 2020-P) EMERG'Y PRODUCTION FDI  MS69  BOTH MERCANTI SIGNED | 2 | $ 80.00 | $ 160.00 |
| 2020-(P) EMERGENCY ISSUE STRUCK AT P. FDI MS70 | 1 | $ 80.00 | $ 80.00 |
| 2017-S 8-COIN PROOF SET WITH MERCCANTI SIGNITURES PR70 DCAM | 8 | $ 400.00 | $ 400.00 |
| 2018- W BURNISHED SAE FDI  MS70  MERCANTI SIGNED | 1 | $ 77.00 | $ 77.00 |
| 2018-W BURNISHED SAE FDI   MS70 Jones signed | 1 | $ 77.00 | $ 77.00 |
| 2016-W WEST POINT MINT MERCANTI SIGNED   MS69 | 2 | $ 63.00 | $ 126.00 |
| 2009   $1 PRESIDENTIAL HARRISON  MS69  ERROR   MOY | 1 | $ 110.00 | $ 110.00 |
| 2010   $1 P/D Presidental FRANKLIN PIERCE  MS67   Moy Signed (2 coin set) | 2 | $ 10.00 | $ 10.00 |
| 2010  $1 Presidential MILLARD FILMORE MS68 EDGE ERROR | 1 | $ 52.00 | $ 52.00 |
| 2009  $1 Silver NATIVE AMERICAN MS68  EDGE ERROR MOY SIGNED | 1 | $ 30.00 | $ 30.00 |
| 2008 EDGE ERROR JOHN Q, ADAMAS SP67   MOY SIGNED | 1 | $ 50.00 | $ 50.00 |
| 2018- W SAE FDI 1 OF 500  PR70DCAM CLEVELAND SIGNED | 1 | $ 99.00 | $ 99.00 |
| 2018 $1 SAE FDI MS70  CLEVELAND SIGNED | 3 | $ 77.00 | $ 231.00 |
| 2018 $1 SAE FDI MS70  CLEVELAND SIGNED | 1 | $ 77.00 | $ 77.00 |
| 2018 $1 SAE FDI MS70 | 1 | $ 77.00 | $ 77.00 |
| 2022-S $1 SAE ADV RELEASE PF70UC GAUDIOSO | 1 | $ 119.00 | $ 119.00 |
| 2021 $1 SAE FDP T-2 MS70 SIGNED EMILY DAMSTRA | 1 | $ 53.00 | $ 53.00 |
| 2021 $1 SAE FDP T-2 DESIGNER SERIES MS70 | 1 | $ 53.00 | $ 53.00 |
| 2021 2-COIN SET ASR LDOP/FDOI MS70  SIGNED MERCANTI & GAUDIOSO | 2 | $ 106.00 | $ 106.00 |
| 2022 $1 SAE FDI CLEVELAND MS70 | 1 | $ 69.00 | $ 69.00 |
| 2022 $1 EAGLE FDI GAUDIOSO MS70 | 1 | $ 69.00 | $ 69.00 |
| 2018- W $1 BURNISHED SAE FDI MS70 SIGNED JOEL ISKOWITZ | 1 | $ 77.00 | $ 77.00 |
| 2018- W $1 SAE FDI MS70 | 1 | $ 77.00 | $ 77.00 |
| 2019W $1 SAE FDI MS70 | 1 | $ 51.00 | $ 51.00 |
| 2021-(s) $1 HERALDIC EAGLE T-1 MS70 MERCANTI EMERG'Y PRODUCTION | 2 | $ 51.00 | $ 102.00 |
| 2021-W T-2 BURNISHED FDI TORCH LABEL SP70 | 1 | $ 89.00 | $ 89.00 |
| 2021 -W T-2 BURNISHED FDI MS70 | 1 | $ 60.00 | $ 60.00 |
| 2021- (P) T-1 SAE  MS70  EMERGENCY ISSSUE FDI  CLEVELAND | 3 | $ 114.00 | $ 342.00 |
| 1884-O Morgan Silver Dollar MS62  RARE VAM-10 0/0 TONED | 1 | $ 100.00 | $ 100.00 |
| 1885-O Morgan Silver Dollar  MS65 TONED (STAR) FDI | 1 | $ 250.00 | $ 250.00 |
| 2021-S 7- COIN SILVER PROOF MINT SET PF70 UC  GAUDIOSO | 7 | $ 119.00 | $ 119.00 |
| 2021 EAGLE LANDING T-2 FDI MS70 GAUDIOSO SIGNED | 1 | $ 60.00 | $ 60.00 |
| 2021 CLEVELAND TORCH LABEL T-2 MS70 | 1 | $ 57.00 | $ 57.00 |
| 2021- W ADVANCED RELEASE TORCH LABEL T-2 PR70DCAM CLEVELAND | 1 | $ 89.00 | $ 89.00 |
| 2021- (S) EMERGENCY PROD. T-1 FDI MS70 MERCANTI SIGNED | 1 | $ 51.00 | $ 51.00 |
| 2021-W T-2 SAE LANDING FDI PF70UC GAUDIOSO SIGNED | 1 | $ 89.00 | $ 89.00 |

| | | | | | |
|---|---|---|---|---|---|
| 2016-P 2- COIN SET MARK TWAIN/NAT'L PARK SILVER COMM PCGS 70UC | 2 | $ | 75.00 | $ | 75.00 |
| 2020-S EMERGENCY PROD. CLEVELAND TORCH LABEL MS70 | 4 | $ | 55.00 | $ | 220.00 |
| 2018-S U.S Mint Reverse Proof 10 coin set ($1 Sacagawea, 50c, 10c, 5c, 1c, 25c Block Is, 25c Picture Rocks, 25c Voyageurs, 25c Cumberland Is, 25c Apostle Is) PF 70 | 10 | $ | 430.00 | $ | 430.00 |
| 2021 $1 SAE T-1 FDI MS70 CLEVELAND SIGNED | 4 | $ | 57.00 | $ | 228.00 |
| 2022 $1 SAE FDI MS70 CLEVELAND SIGNED | 3 | $ | 69.00 | $ | 207.00 |
| 2022-W BURNISHED SAE ADVANCED RELEASE SP70 | 2 | $ | 104.00 | $ | 208.00 |
| 2010 EDGE ERROR LETTERING MILLARD FILMORE MS68 | 1 | $ | 195.00 | $ | 195.00 |
| 2021-W T-2 BURNISHED FDI TORCHCLEVELAND SP70 | 1 | $ | 89.00 | $ | 89.00 |
| 2021 T-1 CLEVELAND SIGNED FDI MS70 | 2 | $ | 57.00 | $ | 114.00 |
| 2022-W BURNISHED ADVANCED RELEASE GAUDIOSO DAMSTRA MS70 | 2 | $ | 45.00 | $ | 90.00 |
| 2021-W T-1 FDI CLEVELAND PROOF PR70DCAM | 2 | $ | 99.00 | $ | 198.00 |
| 2022 AUSTRALIAN WEDGED TAIL EAGLE PF70 UC/UHR FDI MERCANTI | 5 | $ | 175.00 | $ | 875.00 |
| 2021-S 7 Coin US Mint Proof Set ($1, 50c, 10c, 5c, 1c, 25c 25c) DCAM PR70 ANCAS | 7 | $ | 125.00 | $ | 125.00 |
| 2021-S T-2 ADVANCED RELEASE PR70 DCAM | 1 | $ | 124.00 | $ | 124.00 |
| 2022 SAE FDI MS70 | 1 | $ | 69.00 | $ | 69.00 |
| 2021-S U.S. MINT 7-COIN SET ($1, 50c, 25c, 25c, 10c, 5c, 1c)  PF70 FDI UC | 7 | $ | 199.00 | $ | 199.00 |
| 2022-W ADVANCED RELEASE GAUDIOSO SIGNED PF70 UC | 2 | $ | 69.00 | $ | 138.00 |
| 2018-W FIRST DAY PHIL. MERCANTI SIGNED PF70 UC | 3 | $ | 69.00 | $ | 207.00 |
| 2021-W T-1 FDI CLEVELAND TORCH PF70DCAM | 2 | $ | 99.00 | $ | 198.00 |
| 2020-P EMERGENCY ISSUE AT PHIL. FDI MS70 | 2 | $ | 80.00 | $ | 160.00 |
| 2022-S ADVANCED RELEASE ANCAS PR70 DCAM | 1 | $ | 100.00 | $ | 100.00 |
| 2023-S ADVANCED RELEASE GAUDIOSO SIGNED PF70 DCAM | 1 | $ | 100.00 | $ | 100.00 |
| 2022-S ADVANCED RELEASE DAMSTRA PR70DCAM | 1 | $ | 70.00 | $ | 70.00 |
| 2022-S ADVANCED RELEASE CLEVELAND PR70DCAM | 1 | $ | 70.00 | $ | 70.00 |
| U. S. MINT 2018-S SILVER PROOF 8- COIN SET ($1, 50c, 10c, 25c Voyageurs, 25c Block Is, 25c Apostle Is, 25c Picture Rocks, 25c Cumberland Is) FDI PR70UCAM Mercanti | 8 | $ | 550.00 | $ | 550.00 |
| 2021 $1 SAE MERCANTI SIGNED FDI MS70 | 1 | $ | 57.00 | $ | 57.00 |
| 2021-P $1 SILVER STRUCK AT PHIL MERCANTI MS70 | 1 | $ | 114.00 | $ | 114.00 |
| 2021 W&S 2 COIN SET FDI T-1 & T-2 DESIGN EDITION PR70 | 2 | $ | 172.00 | $ | 172.00 |
| 2021 T-1 LAST DAY OF PROD. CLEVELAND SI. T-2 FIRST DAY OF PROD. DAMSTRA MS70 | 1 | $ | 44.50 | $ | 44.50 |
| 2022 ANACS Eagle First Strike ANACS MS70 | 1 | $ | 69.00 | $ | 69.00 |
| 2022 T-2 SAE FDI GAUDIOSO SIGNED MS70 | 1 | $ | 69.00 | $ | 69.00 |
| 2022 ANCAS EAGLE FIRST STRIKE MS70 #11140 OF 15496 | 1 | $ | 69.00 | $ | 69.00 |
| 2022 T-2 SAE FDI GAUDIOSO SIGNED MS70 | 1 | $ | 69.00 | $ | 69.00 |
| 2020-S. AFRICAM KRUGERAND FDI MS70 | 1 | $ | 50.00 | $ | 50.00 |
| 2016 EAGLE EARLY RELEASE 30TH ANNIV. MS70 | 1 | $ | 59.00 | $ | 59.00 |
| 1956 50C TYPE 2 PF68 | 1 | $ | 78.00 | $ | 78.00 |
| 1884-O $1 BRILLIANT UNCIRCULATED | 1 | $ | 65.00 | $ | 65.00 |
| 1885-O $1 BRILLIANT UNCIRCULATED | 1 | $ | 65.00 | $ | 65.00 |
| 2020 $1 FDI MERCANTI MS70 | 2 | $ | 59.00 | $ | 118.00 |
| 2020-W $1 FDI WEST POINT MINT MS70 | 4 | $ | 57.00 | $ | 228.00 |
| 2020-S $1 FDI MERCANTI SIGNED MS70 | 3 | $ | 55.00 | $ | 165.00 |
| 1921 3- COIN SET IN BOX LAST YEAR FOR THE MORGAN CERTIFICATE | 3 | $ | 99.00 | $ | 99.00 |
| 2022-W EAGLE ADVANCED RELEASE PR70 DCAM | 1 | $ | 104.00 | $ | 104.00 |
| 2021-(S) HERALDIC EAGLE T-1 EM.PROG. FDI MS70 | 1 | $ | 51.00 | $ | 51.00 |

18

| | # | $ | $ |
|---|---|---|---|
| 2021 20 COINS IN PLASTIC BOX | 20 | $ 25.00 | $ 500.00 |
| 2017-W $1 FIRST STRIKE MS70 | 5 | $ 63.00 | $ 315.00 |
| 2017 FIRST STRIKE 225 YEAR ANNI MS70 | 5 | $ 63.00 | $ 315.00 |
| 2017 FIRST STRIKE MS70 | 10 | $ 63.00 | $ 630.00 |
| 1808-S TWO 3-PIECE SET IN BLACK CASES 2117W BURNISHED FDI MS70 JONES | 6 | $ 150.00 | $ 150.00 |
| 2017-W $1 SAE 3-COIN SET 1st RELEASE PF70 Ultra Cameo Jones, MERCANTI & Moy | 3 | $ 300.00 | $ 300.00 |
| 2020-(S) $1 EMERGENCY PRO.FDI MS70 | 1 | $ 55.00 | $ 55.00 |
| 2020-(S) $1 FDI SIGNED MERCANTI PF70 UCAM | 2 | $ 125.00 | $ 250.00 |
| 2018-W CONGRADULATION SET FDI MERCANTI PF70 UC | 3 | $ 67.00 | $ 67.00 |
| 1986-S ASE FYOI MERCANTI SIGNED PR70 DCAM | 1 | $ 360.00 | $ 360.00 |
| 1884 $1 Silver Morgan TONED MS63 | 1 | $ 100.00 | $ 100.00 |
| 2020W $1 SAE FDI MERCANTI SIGNED PF70 UC | 4 | $ 89.00 | $ 356.00 |
| 2021(S) $1 SAE EAGLE LANDING T-2 FDI MS70 | 1 | $ 94.00 | $ 94.00 |
| 2018-W $1 SAE BURNISHED FDI SP70 | 1 | $ 67.00 | $ 67.00 |
| **TOTALS** | **300** | | **$ 44,737.46** |

**Table 3—The Unsolicited "Trade" Coins Shipped to Mr. Cleary**

| Date | Invoice | Description | # coins | FMV |
|---|---|---|---|---|
| 2/21/2023 | 14406 | 2023 6-Coin Set  American Eagle MS70 NGC ($1 ASE, $50 Gold Buffalo, $50 Gold American Eagle, $25 Gold Eagle, $10 Gold American Eagle, $5 Gold American Eagle) signed by Anna Cabral | 1 | $5,982.50 |

39.     As set out in detail above, the Austin Lloyd and Austin Coins principals and telemarketing agents, all of whom are members of the Austin Lloyd Enterprise, conspired with one another from day one to run a confidence scheme on Mr. Cleary to convince him to ship his coin inventory to Austin Coins via private interstate carrier, ostensibly for appraisal and possible sale to some fictitious "wealthy clients" and also to con him into purchasing grossly overvalued coins. The ultimate goal of the Defendants, and the primary, if not sole, *raison d'etre* and business model of Austin Lloyd and Austin Coins, is to defraud and impoverish elderly customers, such as and including Mr. Cleary, and by so doing to enrich themselves. As a direct and/or proximate result of the Defendants' above-described wrongful acts and practices, the trusting, elderly Mr. Cleary has suffered (and continues to suffer) the loss of his precious metals coin inventory, as well as the monies Defendants' scammed from him for coins that Chancey and Lesak priced falsely and

unconscionably higher than any fair market value, and resultant economic and personal damages,

which Defendants refuse to remedy. This case has resulted.

**CLAIMS FOR RELIEF/CAUSES OF ACTION**

**COUNT I**
**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT**
**ORGANIZATIONS ACT (RICO) AGAINST THE INDIVIDUAL DEFENDANTS**
**FOR CONSPIRACY TO PARTICIPATE IN AND COMMIT**
**A PATTERN OF FRAUDS**

**40.**     Plaintiff incorporates by reference the preceding paragraphs, including specifically all

factual statements and allegations therein, as though fully copied and set forth below at length.

**41.**     At all relevant times, Plaintiff was a "person" within the meaning of 18 U.S.C. § 1964(c).

**42.**     At all relevant times, Austin Lloyd, Inc. was an "enterprise" within the meaning of 18

U.S.C. § 1961(4).

**43.**     At all relevant times, the Corporate Defendants, Austin Coins and PWH, and each of the

Individual Defendants, Chancey, Lesak (aka "Mike Todd"), Schmidt, White, and Paradise, was a

"person" within the meanings of 18 U.S.C. §§ 1961(3), 1962(b), 1962(c) and 1962(d).

**44.**     The Individual Defendants, as well as PWH, as members of the Austin Lloyd Enterprise

had a meeting of the minds and agreed to commit a series of mail and wire frauds constituting a

pattern of racketeering activity against Mr. Cleary, and, on information and belief, numerous

elderly citizens, as detailed *supra*, in violation of 18 U.S.C. § 1962(d). The particular predicate

acts of the conspiracy against multiple elderly telemarketing customers, including Mr. Cleary,

began no later than 2021[16] and continue through the present. The Individual Defendants, White,

Schmidt, and Paradise, and Lesak (aka "Mike Todd"), each participate in the Austin Lloyd

---

[16]   Stephen E. Mauch, one of the victims whose case is referenced in footnote 4, *supra*, alleged in his
Complaint that he was first contacted by these same telemarketing defendants in early 2021. Another
elderly victim, AnnaMarie F. Eakins, alleges that the scheme by these same telemarketing defendants
to defraud her and steal her coin inventory began in mid-2021. It is clear that Defendants have been
running the same coin fraud telemarketing racket against elderly customers for at least three (3) years.

Enterprise by taking at least some part in controlling and directing the affairs of said enterprise, and the Individual Defendant, Chancey (as well as Lesak (aka "Mike Todd")), who directly interacted with Plaintiff as telemarketing sales agents or employees of Austin Lloyd and Austin Coins and as persons associated with the Austin Lloyd Enterprise agreed to facilitate and commit the individual predicate acts of fraud and theft of property as part of the fraudulent scheme targeting numerous elderly customers, and Mr. Cleary in particular, in furtherance of the Austin Lloyd Enterprise and to enrich themselves. This conspiracy violated 18 U.S.C. § 1962(c) in that it consisted of a pattern of racketeering activity, specifically mail fraud (in violation of 18 U.S.C. § 1341), wire fraud (in violation of 18 U.S.C. § 1343), and violations of the National Stolen Property Act 18 U.S.C. § 2314.

45.     As a direct and proximate result of the violations set forth above, Mr. Cleary has been injured. The Individual Defendants' 18 U.S.C. § 1962(d) conspiracy to violate 18 U.S.C. § 1962(c) is the proximate cause of this injury. Pursuant to the provisions of 18 U.S.C. § 1964(c), Mr. Cleary is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest and attorneys' fees.

**COUNT II**
**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT**
**ORGANIZATIONS ACT (RICO) AGAINST THE INDIVIDUAL DEFENDANTS**
**FOR MAIL FRAUD AND WIRE FRAUD (18 U.S.C. §§ 1341, 1343)**

46.     Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

47.     By the acts described herein, the Individual Defendants, including Chancey and Lesak (aka "Mike Todd"), as members of the Austin Lloyd Enterprise, knowingly executed or intentionally participated in a scheme that defrauded, and was intended to defraud, Mr. Cleary, and numerous

other elderly citizens, and employed the use of the mails, as an integral part of said scheme and in furtherance thereof.

**48.** Central to, and in furtherance of, that scheme, and as described above in minute detail, the Individual Defendants, in their capacities of telemarketing sales agents, principals of Austin Lloyd and Austin Coins, and "investment advisors," made grossly inaccurate misrepresentations over the telephone to Mr. Cleary as to the: (1) grade of the coins, (2) the fair market value of the coins and (3) the investment potential of the coins they advised him to purchase from Austin Coins and, taking advantage of his reliance on such misrepresentations, overcharged him for those coins beyond any commercially supported price for the coins. They also utilized misrepresentations that there were "wealthy clients" coming to New York, that they needed more "inventory" to show the non-existent "wealthy clients," that they would "exchange [Mr. Cleary's] coins for higher grade coins," that they would "guarantee" Mr. Cleary a 20% annual profit, and that Mr. Cleary "could get out at any time" in order to con him into shipping them his coin inventory. The Individual Defendants' use of the wires in perpetrating their schemes was not merely incidental to their fraud and misrepresentations as to grade and value of the coins but rather, given that the scheme was dependent upon telemarketing technology, was instrumental to their scheme in that Mr. Cleary was never able to see them in person, look them in the eye, and gauge their sincerity and veracity— much less physically examine the coins before purchase. The Individual Defendants further compounded their misrepresentations as to the coins' grade, value and investment potential by enclosing with the coin shipments via the interstate mails (or rather "private or commercial interstate carrier") sales invoices which repeated (and documented) the gross misrepresentations and fraudulent overpricing as to the coins they offered and sold Mr. Cleary as "investments." Those invoices constitute correspondence sent or delivered by a private or commercial interstate carrier

incorporating false and misleading statements regarding the values and grades of the coins the Individual Defendants advised Mr. Cleary to purchase as "investments."

49.     The means by which the Individual Defendants were able to convince Mr. Cleary to ship his coin inventory to Lesak and Austin Lloyd under a false agreement to appraise and potentially sell those coins and to remotely market coins to Mr. Cleary at such exorbitantly outrageous prices in furtherance of the scheme and thereby defraud him and convert and steal his coins is the unholy combination of the obscure inner workings of the retail precious metals telemarketing industry and the soulless greed of the members of the Austin Lloyd Enterprise. That all interactions, communications, and sales transpired via wire (i.e. telephone) was not coincidental or happenstance. Rather, telemarketing enabled and defined the scheme.

50.     As a direct and proximate result of the violations set forth above and summarized in TABLES 1 through 3, above, Mr. Cleary has been injured. The Individual Defendants' multiple, repeated violations of 18 U.S.C. §§ 1341 and 1343 are the proximate cause of this injury. Pursuant to the provisions of 18 U.S.C. § 1964(c), Mr. Cleary is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest and attorneys' fees.

### COUNT III
### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATION OF THE NATIONAL STOLEN PROPERTY ACT (18 U.S.C. § 2314)

51.     Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

52.     By certain of the acts described herein, the Individual Defendants, as members of the Austin Lloyd Enterprise, violated the National Stolen Property Act 18 U.S.C. § 2314, which makes it illegal to transport or transfer in interstate commerce money valued at $5,000 or more knowing

the same to have been stolen or taken by fraud. This is made a form of racketeering activity by 18 U.S.C. § 1961(1)(B).

53.     By certain acts described herein, members of the Austin Lloyd Enterprise, specifically Chancey and Lesak (aka "Mike Todd"), transported or received money with a value of more than $5,000, knowing said money to have been taken by fraud. Said money was transferred in interstate commerce.

54.     Specifically, by artifice and misrepresentation, Chancey and Lesak convinced Mr. Cleary to ship his coin inventory to Austin Lloyd for appraisal and potential sale with no intention of providing such services; rather, Chancey and Lesak at all times intended to convert and sell said coins worth more than $5,000 in furtherance of the Austin Lloyd Enterprise and to enrich themselves and the other members of said enterprise.

55.     As a direct and proximate result of the violations set forth above, Mr. Cleary has been injured. The Individual Defendants' violation of 18 U.S.C. § 2314 is the proximate cause of this injury. Pursuant to the provisions of 18 U.S.C. § 1964(c), Mr. Cleary is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest and attorneys' fees.

## COUNT IV
## FRAUD AND/OR FRAUDULENT CONCEALMENT

56.     The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

57.     Via a series of oral misrepresentations and high-pressure sales tactics (as set out in detail above), Chancey and Lesak, acting individually and as principals and/or telemarketing representatives of Austin Lloyd and Austin Coins, (1) defrauded Mr. Cleary by convincing him via lies and misrepresentations to ship Austin Lloyd his precious metals inventory for appraisal

and potential sale and then simply converting and stealing all the coins from Mr. Cleary for their own ill-gotten enrichment and (2) convinced Mr. Cleary to purchase grossly overpriced bullion coins as "investments" at exorbitant markups, thereby defrauding Plaintiff pursuant to New York common law.

58.     In addition, the Defendants are liable for fraudulent concealment against Mr. Cleary. The elements of fraudulent concealment are identical to the elements for fraud with the addition that the defendant must have a duty to disclose material information and failed to do so.

59.     The Defendants, Austin Lloyd and Austin Coins, by and through their individual principals and telemarketing sales agents, Chancey and Lesak, represented to Mr. Cleary that they were "investment advisors." Thus, they had a duty to disclose to him that: (1) they never intended to appraise and broker the sale of his coins but rather their goal from the outset was to obtain Mr. Cleary's coins under false pretenses and convert, steal, and resell his coins for their own enrichment and the enrichment of Austin Lloyd, Austin Coins, and their principals and ringleaders, and (2) that the coins they marketed to him and advised him to purchase were being sold for prices fraudulently higher than any fair market value and that, despite their representations, that the coins they advised him to buy and sold him would never result in any investment income or financial return or security for him. The Defendants, and specifically Chancey and Lesak, had a duty to make such disclosures based upon the "special facts" doctrine, which provides that a duty to disclose arises when one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair. The "special facts" doctrine is applicable to the present case because the withheld and hidden material information was "peculiarly within the knowledge" of the Defendants, and Plaintiff could not have discovered such information through the exercise of ordinary intelligence.

60.     The Defendants, Austin Lloyd, Austin Coins, and their individual principals and telemarketing sales agents, made the above-detailed false representations to Mr. Cleary with the intent that he rely upon them and with full knowledge that such representations were false when made. Mr. Cleary did, in fact, rely on these material and false representations when deciding to ship his coins to Austin Lloyd and to purchase additional coins from Austin Coins which resulted in significant financial damages and the Defendants' fraudulent financial gain. As a direct and/or proximate result of the false and misleading representations attributable to Austin Lloyd and Austin Coins, through its principals and telemarketing sales agents, and specifically Chancey and Lesak, Mr. Cleary has suffered (and continues to suffer) damages arising from and related to the amounts greatly in excess of fair market values he paid for the coins at issue and the theft and conversion of his coin inventory and resultant financial damages at the hands of the Defendants, as well as mental anguish damages.

61.     By virtue of the confidential business relationships created and established between Mr. Cleary and the self-identified Austin Lloyd/Austin Coins "investment advisors," Chancey and Lesak, the Defendants had a duty to disclose the above-described concealed material facts to Mr. Cleary. The deliberate silence, when they had a duty to speak, and the resulting nondisclosure of the above-described concealed material facts, are the equivalent of false representations and/or omissions. Such false representations and/or omissions were made knowingly and intentionally by Chancey and Lesak, in both their individual capacities and their capacities as agents, employees, and/or principals of Austin Lloyd and Austin Coins, and with their knowledge and approval, or, at the very least, in reckless disregard of Plaintiff's rights and interests.

62.     Mr. Cleary justifiably relied on the false representations and/or omissions of Chancey and Lesak, in both their individual capacities and their capacities as agents, employees, and/or

principals of Austin Lloyd and Austin Coins, thereby incurring significant financial damages. Defendants' wrongful actions constitute fraud at common law.

63.      Defendants, Chancey and Lesak, in both their individual capacities and their capacities as agents, employees, and/or principals of Austin Lloyd and Austin Coins, concealed their wrongful actions with the intent to mislead and defraud Mr. Cleary. Mr. Cleary was not aware of, nor, through the exercise of due diligence, could he have become aware of Defendants' wrongful actions until such wrongful actions were already consummated and/or brought to light by third parties. Due to the Parties' confidential business relationships, which were predicated on their mutual trust and confidence, and Defendants' superior knowledge and/or means of knowledge, Chancey and Lesak, in both their individual capacities and their capacities as agents, employees, and/or principals of Austin Lloyd and Austin Coins, had a duty to disclose to Plaintiff the above-detailed materially false information. Defendants' failure to do so constitutes fraudulent concealment under New York law.

**COUNT V**
**NEGLIGENT MISREPRESENTATION**

64.      The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

65.      Defendants made certain representations to Mr. Cleary in the course of their business and in transactions in which Defendants had a substantial monetary interest. Defendants negligently supplied false information that guided Mr. Cleary in his decisions to purchase the grossly overpriced coins from Austin Coins and to ship his coin inventory to Austin Lloyd for appraisal and potential sale.

66.      Defendants failed to exercise reasonable care and competence in obtaining, confirming the accuracy of, and communicating such information to Mr. Cleary and/or making the above-

described false and material misrepresentations and omissions.

67.    Mr. Cleary justifiably relied on Defendants' negligent misrepresentations when he purchased the grossly overpriced coins from Austin Coins and in shipping his coin inventory to Austin Lloyd for appraisal and potential sale, which misrepresentations directly and/or proximately caused him to suffer ruinous damages to the financial benefit of Defendants. Defendants' wrongful conduct constitutes negligent misrepresentation under New York common law.

## COUNT VI
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349

68.    The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

69.    Defendants' actions described herein constitute deceptive acts and practices in the conduct of business, substantially affecting trade or commerce in New York in violation of the New York Consumer Protection from Deceptive Acts and Practices, Gen. Bus. Law § 349.

70.    More specifically, Defendants, individually and through the Austin Lloyd and Austin Coins telemarketer employees and representatives, knowingly and intentionally utilized unlawful, false, misleading, deceptive and unconscionable high-pressure sales tactics and misrepresentations to convince Mr. Cleary to ship his coin inventory to Austin Lloyd in reliance upon misrepresentations that Defendants would appraise his coins and potentially sell them to "wealthy clients" and also to purchase grossly overpriced coins from Austin Coins, through one or more of the following deceptive acts or practices, including:

a.     Holding themselves out as "investment advisors" while having no investment expertise;

b.     Promising to conduct appraisals of coins and then, once customers ship precious metal coins to Austin Lloyd, instead converting, stealing, and reselling the customers' coins for the enrichment of Austin Lloyd and Austin Coins and their principals and agents;

c.      Misrepresenting attributes, grades, and values of precious metal coins;

d.      Claiming that the coins could be held for a short period and then be sold to ready buyers for a large profit;

e.      Advising customers to purchase "unique," "rare, and "desirable" bullion coins, when, in fact, there is nothing unique or rare about the coins;

f.      Using grading and marketing to deceptively sell bullion at a premium even though there are very large populations of the high-grade coins and/or the "certification" is commonly duplicated with minor expense;

g.      Misrepresenting the market values of the coins to prevent or delay customers from determining the actual market price of bullion coins;

h.      Claiming a volatile market based upon the spot price of gold yet selling numismatic and bullion coins at such exorbitant and fraudulent prices to make "market price" nothing but a gimmick; and

i.      Various other acts and practices that may be uncovered during discovery.

**71.**      As a direct and proximate result of Defendants' unlawful, unfair, and deceptive acts and practices, Mr. Cleary has suffered actual damages of at least Forty-Nine Thousand Twenty-Two and 46/100 Dollars ($49,022.46).

**COUNT VII**
**NEGLIGENCE**

**72.**      Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**73.**      Defendants negligently failed to return Plaintiff's coins to him and also valued, promoted, marketed, advertised, and sold grossly overvalued coins to Plaintiff. This violated and breached Defendants' duty to Plaintiff to exercise reasonable care in valuing, promoting, marketing, advertising, and selling the coins to Plaintiff. Defendants' wrongful conduct directly and/or proximately caused Plaintiff to suffer damages. Defendants' wrongful conduct constitutes negligence at common law.

## COUNT VIII
## MONEY HAD AND RECEIVED

**74.**     The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**75.**     By their above-described wrongful actions and/or inaction, (1) Defendants received money belonging to Plaintiff, (2) Defendants benefitted from receipt of the money, and (3) under principles of equity and good conscience, Defendants should not be permitted to keep the money. Defendants, therefore, should be compelled to refund such wrongfully charged and collected funds to Plaintiff under the equitable doctrine of money had and received.

## COUNT IX
## UNJUST ENRICHMENT

**76.**     The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**77.**     Defendants (and possibly other persons and entities, including Defendants' employees and representatives) have been unjustly enriched by promising to appraise Plaintiff's coins but instead converting, stealing, and reselling those coins to others and by selling Plaintiff coins at exorbitant markups for prices far above any recognized, reasonable, industry-standard market values and enriching themselves thereby. Accordingly, Plaintiff seeks to impose a constructive trust over (and recover) all amounts by which Defendants (and possibly other persons and entities, including Defendants' employees and representatives) have been unjustly enriched.

## ALTER-EGO

**78.**     Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**79.**     Alter-ego liability is established upon a showing that a defendant has complete domination of a corporation in respect to the transaction at issue and that such domination was used to commit

a fraud or wrong against the plaintiff which resulted in plaintiff's injury. Because a decision to pierce the corporate veil will necessarily depend on the attendant facts and equities of the case at issue, there are no definitive rules governing the circumstances when this power may be exercised.

80.     Based upon information and belief, each of the individual Defendants, and specifically Lesak, White, Schmidt, and Paradise, individually and collectively, use the corporate forms of Austin Lloyd and Austin Coins as alter-egos and as mere tools or business conduits. The individual Defendants completely dominate Austin Lloyd and Austin Coins to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct. Upon information and belief, there are undocumented funds transfers between Austin Lloyd and Austin Coins and the Defendants, and there is an unclear allocation of profit and losses between Austin Lloyd and Austin Coins and the Defendants. In short, Austin Lloyd and Austin Coins are substantially one and the same with Lesak, White, Schmidt, and Paradise, or some of them, and the relationship between them is an illegitimate use of the corporate form.

## RESPONDEAT SUPERIOR

81.     Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

82.     Defendant Austin Lloyd and Defendant Austin Coins also are liable for the above-detailed wrongful acts committed by their principals, agents, representatives, and employees during the course and scope of their agency/employment by Austin Lloyd and Austin Coins; to wit, the principals', agents', employees', and representatives' wrongful conduct was committed (i) within their general authority, (ii) in furtherance of Austin Lloyd's and Austin Coins' business, and (iii) to accomplish the objective for which the principals/agents/employees/representatives were retained, all of which directly and/or proximately caused Plaintiff to suffer damages to the financial

benefit of Defendants, Austin Lloyd and Austin Coins—and for which Defendants, Austin Lloyd and Austin Coins are liable under the doctrine of *respondeat superior*.

## RELIEF REQUESTED

**83.**   **RECISSION**.   Based on Defendants' above-described wrongful conduct, Plaintiff is entitled to recission of the transactions at issue by which Defendants fraudulently marketed and sold the grossly overvalued coins to Plaintiff and by which Defendants stole and converted Plaintiff's coin inventory. All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

**84.**   **ACTUAL AND CONSEQUENTIAL DAMAGES.**   As direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered (and continues to suffer) damages in the form of, inter alia, the amounts lost when Defendants converted and stole his coin inventory and the amounts paid to Defendants for coins in excess of their value. Plaintiff is entitled to recover consequential damages related to lost investments when he was lured into purchasing the coins and the mental anguish he has suffered in connection with these transactions in an amount to be determined by the trier of fact.  All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

**85.**   **TREBLE DAMAGES.**   Plaintiff also is entitled to treble damages for Defendants' knowing, willful and intentional wrongful conduct pursuant to 18 U.S.C. § 1964(c) and in violation of New York's GBL § 349 (up to the applicable cap plus the supplemental civil penalty in GBL § 349-c).   All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

**86.**   **EXEMPLARY DAMAGES**.   Defendants' wrongful actions (and failure to disclose such wrongful actions) were committed intentionally, willfully, with malice and/or with conscious and/or reckless disregard for Plaintiff's rights and interests.  Accordingly, Plaintiff also is entitled

to an award of punitive damages against Defendants, both as punishment and to discourage such wrongful conduct in the future.

**87.   ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS**.  Plaintiff also is entitled to recover his reasonable and necessary attorneys' fees, litigation expenses and court costs actual damages to be determined by the trier of fact.

**WHEREFORE**, Plaintiff, William Kevin Cleary, requests judgment in his favor and against the Defendants, jointly and severally, awarding compensatory damages for all actual and consequential losses, treble damages under 18 U.S.C. § 1964(c), exemplary damages, and all amounts by which Defendants have been unjustly enriched; directing an equitable accounting for all benefits, consideration and profits received, directly or indirectly, by Defendants, including the imposition of  a constructive trust and the voiding of unlawful transfers; and awarding attorneys' fees and litigation expenses pursuant to 18 U.S.C. § 1964(c) and New York G.B.L. § 349(h) and the costs of suit pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d); together with pre-judgment interest pursuant to New York C.P.L.R. § 5004 or any higher applicable rate and post-judgment interest at the highest legal rate, and such other and further relief as the Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all of his claims and causes of action so triable.

Dated: Thornwood, New York
March 6, 2024

**LAW OFFICES OF KENNETH G. WALSH**


By: */s/ Kenneth G. Walsh*
       Kenneth G. Walsh (1654)
       59 Kensico Road, Suite 7
       Thornwood, New York 10594
       (929) 241-7307
       *kwalsh@kgwalshlegal.com*

       -and-

       **STEVENS LAW FIRM**

       R. Lyn Stevens (pro hac vice forthcoming)
       210 Clearview Avenue, Suite C
       Friendswood, Texas 77546
       (409) 880-9714
       *Lyn@Stevens.Law*
       Texas Bar No. 19189020

       *Attorneys for Plaintiff,*
       *William Kevin Cleary*

# EXHIBIT A

**Austin Coins**
48 S Service Rd Ste 115
Melville, NY 11747
Phone: 1-516-595-8600
Fax: 1-631-231-6881

PAID
02/14/2023

## Invoice

| Date | Invoice # |
|------|-----------|
| 2/14/2023 | 12557 |

| Bill To | Ship To |
|---------|---------|
| Kevin Cleary<br>3039 Olympia Dr<br>Decatur, IL 62521 | Kevin Cleary<br>3039 Olympia Dr<br>Decatur, IL 62521 |

| | Terms | Rep |
|--|-------|-----|
| | PAID IN FULL | MT |

| Description | Qty | Amount |
|-------------|-----|--------|
| Mixed Date $5 Walking Liberties NGC MS61 | 3 | |
| | | |
| Charged on 2/14/23    Card Ending: 6347 | | 950.00 |
| Charged on 2/14/23    Card Ending: 6347 | | 4,000.00 |
| | | |
| Fedex Tracking Number: 7714 9644 0585 | | |

I hereby acknowledge that I have ordered the listed merchandise above and concur with the payment method, terms, condition, and disclosure set forth herein.
I have prodivided my credit card/check information over the phone & authorized this transaction.

PLEASE SIGN & RETURN ONE COPY VIA THE PREPAID SELF ADDRESSED ENVELOPE.

Signature X_____

1. Items removed from their original holder cannot be returned
2. As the future is unknown, no guarantee is made or implied
3. All sales are final, due to the market value changes
4. Items can be returned within 7 days upon receipt, after which ALL SALES ARE FINAL.
5. No returns will be accepted without prior verbal authorization and verification of coins returned in their original condition
6. All transactions are deemed to take place in NY a place of venue under Suffolk County and New York law
7. Purchaser has agreed to the terms & conditions that the sales representative has set forth via our website

| **Balance Due** | $0.00 |
|-----------------|-------|

| Subtotal | $4,950.00 |
|----------|-----------|

| Total | $4,950.00 |
|-------|-----------|

# EXHIBIT B

### AUSTIN LLOYD INC.

48 S Service Rd, Ste 115| Melville, NY 11747
Phone: 516-595-8600 | Fax: 631-239-6881
Email: info@austinlloydinc.com

#### AUTHORIZATION FORM

Client Name: Kevin Cleary

Senior Advisor Name: Mike Todd

This agreement gives legal authorization for Mike Todd, *Senior Account Advisor at Austin Lloyd Inc* to trade, sell, or purchase the coins sent in for appraisal from the respected client. This document is to be signed and dated by the client(s) and Mike Todd, of Austin Lloyd Inc. and returned to Austin Lloyd.

CUSTOMER Signature: _____  Date signed: _____
                      Kevin Cleary

Austin Lloyd Inc.
Signature:           *Mike Todd* _____  Date signed:  2/14/2023
                      Mike Todd,
                      Senior Account Advisor at Austin Lloyd
                      Inc.

# EXHIBIT C

**Austin Coins Inc**
48 S Service Road Suite 115
Melville, New York 11747

PAID

**INVOICE**

# INV-014406
Date: 02/21/2023

**Bill To**
Kevin Cleary
3039 Olympia Dr
Deactur, IL 62521

**Ship To**
Kevin Cleary
3039 Olympia Dr
Deactur, IL 62521

| Terms | Rep |
|---|---|
| PAID IN FULL | Mt |

| Description | Qty | Amount |
|---|---|---|
| As Per Trade | 1 | 0.00 |
| 2023 Anna Cabral 6 Coin Set First Day of Issue NGC MS70 (American Silver Eagle, $50 Gold Buffalo, $50 Gold Eagle, $25 Gold Eagle, $10 Gold Eagle, $5 Gold Eagle) | 1 | 0.00 |

| | |
|---|---|
| **Total** | **$0.00** |
| Payment Made | (-) 0.00 |
| Credits Applied | (-) 0.00 |
| **Balance Due** | **$0.00** |

Notes
FedEx Tracking Number: 7730 7180 8630

Terms & Conditions
I hereby acknowledge that I have ordered the listed merchandise above and concur with the payment method, terms, condition, and disclosure set forth herein. I have provided my credit card/check information over the phone & authorized this transaction.
1. Items removed from their original holder cannot be returned
2. As the future is unknown, no guarantee is made or implied
3. All sales are final, due to the market value changes
4. Items can be returned within 10 days upon receipt, after which ALL SALES ARE FINAL.
5. ALL TRADES ARE FINAL.
6. No returns will be accepted without prior verbal authorization and verification of coins returned in their original condition
7. All transactions are deemed to take place in NY a place of venue under Suffolk County and New York law
8. Purchaser has agreed to the terms & conditions that the sales representative has set forth via our website

PLEASE SIGN & RETURN ONE COPY VIA THE PREPAID SELF ADDRESSED ENVELOPE.

Signature: _____